UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
UNITED STATES OF AMERICA  )
                                            )
          v.                                )        CRIMINAL NO. 08-10345-DPW
                                            )
DIANNE WILKERSON            )
      and                                   )
CHARLES "CHUCK: TURNER    )
                                            )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT WILKERSON'S
MOTION TO SEVER DEFENDANTS OR COUNTS**

Defendant Dianne Wilkerson has moved to sever the Second Superseding Indictment

because she and co-defendant Charles Turner have been misjoined in violation of Fed. R. Crim.

P. 8(b), since they are not alleged to have participated in the same series of acts or transactions

which constitute an offense or offenses.  Accordingly, the Court must either sever the defendants,

or sever the counts in which the two defendants are misjoined.  Alternatively, defendant seeks

relief from prejudicial joinder under Fed. R. Crim. P. 14(a).

The Second Superseding Indictment contains 36 counts against the two defendants:

Dianne Wilkerson, at material times a Massachusetts State Senator, and Charles Turner, a Boston

City Councilor.  The factual context consists in two alleged schemes, the so-called "Liquor

License Scheme," detailed in ¶¶ 1-6 and 36-48, in which both Wilkerson and Turner are alleged

to have participated, and the "Parcel 8 Scheme," set out in ¶¶ 7-8 and 51-69, 28, 2008, in which

only Wilkerson is alleged to have been involved.  Additionally, defendant Turner, alone, is

charged with making false statements to the FBI.

**The Liquor License Counts**

The Liquor License allegations center around efforts to assist a businessman, "Witness A," and an undercover FBI agent posing as a businessman, "Witness B," in obtaining a liquor license (or licenses) in the City of Boston for a proposed restaurant/lounge to be known as "Dejavu." Count 1 charges the two defendants with violating the Hobbs Act, 18 U.S.C. §1951, by conspiring to obtain money from A between May and November 2007.[1] Counts 2-4 and 6-8 allege that Wilkerson committed substantive Hobbs Act violations by obtaining cash payments in connection with the liquor license effort, from A on various dates between June 5, 2007 and November 2, 2007, and from B on March 12, 2008.[2] Counts 14 - 22 charge Wilkerson with substantive Honest Services Mail Fraud violations, under 18 U.S.C. §§1341 and 1346, also in connection with the liquor license scheme, on various dates between August 9, 2007 and

---

[1]  Count 1 charges that:

> On or about May 2007 through on or about November 2007, in the District of Massachusetts, DIANNE WILKERSON and CHARLES "CHUCK" TURNER, defendants herein, did knowingly conspire to obtain property, to wit, United States currency, from Witness A with his consent, which consent was obtained under color of official right as a Massachusetts State Senator and a Boston City Councilor, and did thereby obstruct, delay, and affect interstate commerce and the movement of any article in interstate commerce.

[2]  Count 2:  June 5, 2007; receipt of $500 from A
Count 3:  June 18, 2007; receipt of $1000 from A
Count 4:  August 2, 2007; receipt of $1000 from A
Count 6:  August 31, 2007; receipt of $1000 from A
Count 7:  November 2, 2007; receipt of $3000 from A
Count 8;  March 12, 2008; receipt of $2000 from B.

December 21, 2007.[3/]  Count 5 charges defendant Turner with a substantive Hobbs Act violation by obtaining a cash payment from A on August 3, 2007.

### The False Statement Counts

Counts 11-13 charge defendant Turner, alone, with making false statements to the FBI on October 28, 2008, in violation of 18 U.S.C. §1001, by denying that he had ever accepted money from A.  It is not alleged that Wilkerson had anything to do with the false statements; they were allegedly made after she was arrested.[4/]

### The  Parcel 8 Counts

The Parcel 8 allegations concern Wilkerson's receipt of payments from Witness D, a businessman, and Witnesses C, an undercover FBI agent posing as a businessman, allegedly in connection with a plan to develop a publicly owned piece of property known as "Parcel 8" and various acts taken in her official capacity to assist the project.   The indictment alleges that defendant Wilkerson devised the scheme in or about January 2008.  Then, counts 23-36 charge her, alone, with substantive Honest Services Wire Fraud violations between June 27, 2008 and

---

[3/]        Count 14:  August 9, 2007; letter
            Count 15:  August 16, 2007; letter
            Count 16:  September 11, 2007;letter
            Count 17:  October 9, 2007; letter
            Count 18:  October 16, 2007; notification
            Count 19:  October 17, 2007; letter
            Count 20:  November 6, 2007; letter
            Count 21:  December 14, 2007; letter
            Count 22:  December 21, 2007; letter

[4/] Wilkerson was arrested at 7:43 am on that date.  See Affidavit of Special Agent Julia Cowley, ¶4, Exhibit 1 to Document No. 94 (Government's Response to Court's July 2, 2009 Order).

-3-

October 21, 2008.[5/]  It is not alleged that Turner had anything to do with the Parcel 8 scheme or these offenses.

## ARGUMENT

### A.  The Defendants are Misjoined Under Fed. R. Crim. P. 8(b).

Under Fed. R. Crim. P. 8(b), defendants may be joined in the same indictment only "if they are alleged to have participated in the same acts or transaction or in the same series of acts or transactions constituting an offense or offenses."  When multiple defendants are not each named in each count, the question is whether all of the counts allege offenses which are in "the same series."  In order to constitute parts of the "same series" there must be "relatedness" between offenses.  *United States v. Turkette*, 632 F.2d 896, 906-08 (1st Cir. 1980), *rev'd on other grounds*, 452 U.S. 576 (1981).  Generally, relatedness is established by an overarching conspiracy or similar "umbrella" charge:

> Normally, the government may join multiple defendants in a single
> indictment provided that at least one count alleges a conspiracy or a
> continuing criminal enterprise ("CCE") and the indictment
> separately alleges that the appellant committed a substantive

---

[5/]        Count 23:  June 27, 2008; telephone call
Count 24:  June 27, 2008; telephone call
Count 25:  July 7, 2008; telephone call
Count 26:  July 9, 2008; telephone call
Count 27:  July 11, 2008; telephone call
Count 28:  July 11, 2008; telephone call
Count 29:  July 23, 2008; email
Count 30:  July 23, 2008; email
Count 31:  September 24, 2008; telephone call
Count 32:  September 24, 2008; telephone call
Count 33:  September 29, 2008; telephone call
Count 34:  October 1, 2008; telephone call
Count 35:  October 1, 2008; email
Count 36:  October 21, 2008; email

offense during the course and in furtherance of the "umbrella"
conspiracy or CCE..

*United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998).  There must be a "connecting link

between codefendants and multiple offenses."  *United States v. Arruda*, 715 F.2d 671, 678 (1st

Cir. 1983).  Thus, for example, in *United States v. Luna*, 585 F.2d 1, 4 (1st Cir. 1978),  the link

was provided by an umbrella conspiracy count; in *United States v. Tashjian*, 660 F.2d 829, 833

(1981) it was a pattern of racketeering activity which "embraced all of the acts and transactions

upon which the other . . . counts are were based."  At a minimum, there must be a "'substantial

identity of facts or participants'" underlying the charged offenses."  *United States v. Yefsky*, 994

F.2d 885, 895 (1st Cir. 1993).

      The necessary relationship between defendants and counts does not exist in this case.  In

the first place, Wilkerson has no connection to the Turner false statement counts.  There was no

actual participation by Wilkerson.  Nor were the offenses part of the alleged conspiracy.  That

conspiracy – according to the allegations on the face of the indictment – was complete in

November 2007, almost a year to the day prior to Turner's offense.  Nor is there a substantial

identity of facts.  In order to meet that criterion, "essentially the same facts must be shown for

each of the consolidated crimes." *Turkette, supra*, at 908.  Mere overlap of evidence is not

enough.  *United States v. Shaw*, 113 F. Supp. 2d 152, 159-60 (D. Mass. 2000)(Keeton, J.)  "If the

factual matrices of the alleged facts are different, there is no series and, hence, no joinder."

*Turkette*, at 908.  The same evidence must be needed to prove each offense.  ("Our review of the

transcript shows that the narcotics evidence was unnecessary to prove the arson-mail fraud and

vice versa." *Id*. at 909. )  Here, Turner's false statement is not only not needed to prove any

offense charged against Wilkerson, it would be completely inadmissible against her.  *See* Section

B, below.

And there is absolutely no connection between Turner and the Parcel 8 scheme.  Although the schemes are alleged to be similar, in that they allegedly involved payment in return for official acts, it is very well settled that, under Rule 8(b), "[a] series means something more than similar acts."  *United States v. Martinez*, 479 F.2d 824, 827 (1st Cir. 1973); *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966).  There is no allegation in the indictment that Turner had any role in the Parcel 8 scheme or any of the acts.  Nor was the scheme in any way part of the charged conspiracy.  Indeed, the charged conspiracy and the Parcel 8 scheme are not even concurrent in time: according to the indictment, the conspiracy was complete in November 2007, but the Parcel 8 scheme was not even devised until January 2008.  Moreover, there is no essential identity of facts.  Indeed, here there is not even any overlap; the matters are entirely separate.

**B.  <u>The Defendant Is Entitled to Relief Under Rule 14(a)</u>.**

Even if joinder were proper under Rule 8, Rule 14 provides for severance if joinder "appears to prejudice a defendant."  Severance is required "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  That standard is satisfied here.  Typically, prejudice is found to exist where joinder would permit harmful evidence to be introduced which would not be admissible against a defendant in a separate trial.  "[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty."  *Id.*  This is precisely the situation here.  Defendant Turner's statements to the FBI would not be admissible against Wilkerson since they were not made "during the course and in furtherance of the conspiracy,"

Fed. R. Evid. 801(d)(2)(E).  Once a conspiracy has "ended in success or failure," *Krulewitch v.*

*United States*, 336 U.S. 440, 442 (1949), statements by one codefendant are not admissible

against the other.   The Turner statements were made well after the limited object of the

conspiracy – "to obtain property, to wit, United States currency, from Witness A" – was fulfilled

and, according to the allegations of the indictment, a full year after the conspiracy was ended.

Moreover, there is no allegation that there ever was "an express agreement original agreement

among the conspirators to continue to act in concert in order to cover up" the crime.  *Grunewald*

*v. United States*, 353 U.S. 391, 402 (1957); *United States v. Twitty,* 72 F.3d 228, 233 (1st Cir.

1995).  And, this evidence would be especially harmful to Wilkerson.   The government will

naturally suggest that Turner's willingness to lie constituted an admission of guilt – and, in

particular, a recognition that there was no legitimate basis for the receipt of money from A.  This,

of course, will spill directly over onto Wilkerson.[6]

## CONCLUSION

For the reasons set forth above, the Court should order severance of defendants or counts.

---

[6]  The evidence of Wilkerson's participation in the Parcel 8 scheme will similarly be inadmissible against Turner, as the government does not allege that he had any involvement in it.

Respectfully submitted,


_/s/ Max D. Stern_

Max D. Stern
BBO # 479560
Alexandra Deal
BBO # 660645
Stern Shapiro Weissberg & Garin, LLP
90 Canal Street
Suite 500
Boston, MA 02114
(617) 742-5800


Dated: November 2, 2009


### CERTIFICATE OF SERVICE

I hereby certify that this document(s)
filed through ECF system will be sent
electronically to the registered participants
as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those
indicated as non registered participants on November 2, 2009.

_/s/ Alexandra H. Deal_